UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ANDREW LEE OWENS,

        Petitioner,        Case No. 1:15-cv-1321

v.        Honorable Paul L. Maloney

TONY TRIERWEILER,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner is serving four prison terms of fifteen to fifty years, imposed by the Kent County Circuit Court on September 26, 2013, after Petitioner pled no contest to three counts of first-degree criminal sexual conduct (CSC I), MICH. COMP. LAWS § 750.520b, assault with intent to do great bodily harm less than murder (GBH), MICH. COMP. LAWS § 750.82, and being a fourth-offense habitual offender, MICH. COMP. LAWS § 769.12. In his *pro se* petition, Petitioner raises two grounds for relief, as follows:

    I.    DID THE TRIAL COURT UNLAWFULLY DEPRIVE THE DEFENDANT OF HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER PROTECTED RIGHTS UNDER THE UNITED STATES AND MICHIGAN CONSTITUTION[S] WHEN IT SCORED 10 POINTS ON OV-4; ON PLAIN ERROR AND/OR INEFFECTIVE ASSISTANCE OF COUNSEL SHOULD THIS COURT REVIEW THIS ISSUE?

> II. DID THE TRIAL COURT UNLAWFULLY VIOLATE THE UNITED STATES AND MICHIGAN CONSTITUTIONS IN SENTENCING THE DEFENDANT TO CONCURRENT PRISON TERMS OF 15-50 YEARS ON A HABITUAL OFFENDER 4TH SUPPLEMENT ARISING OUT OF THE CSC 1 AND GBH ASSAULT CONVICTIONS; ON PLAIN ERROR AND/OR INEFFECTIVE ASSISTANCE OF COUNSEL GROUNDS SHOULD THIS COURT REVIEW THIS ISSUE?

(Am. Pet., ECF No. 4, PageID.34, 36.) Respondent has filed an answer to the petition (ECF No. 9), stating that the grounds should be denied because they are either noncognizable state law claims or meritless. Upon review and applying the AEDPA standards, I find that the grounds are either noncognizable or meritless. Accordingly, I recommend that the petition be denied.

## Procedural History

### A. Trial Court Proceedings

The state prosecution arose from Petitioner's physical assault and three sexual assaults of his then-girlfriend. Petitioner was initially charged with only one count of CSC I, together with GBH, interfering with an electronic communication for assistance, MICH. COMP. LAWS § 750.540(5)(a), and being a fourth-offense habitual offender. At the preliminary examination on February 11, 2013, the prosecutor sought two additional counts of CSC I. Petitioner was bound over on three counts of CSC I, GBH, interfering with electronic communication, and being a fourth-offense felony

offender. The prosecutor later filed a notice of criminal sexual conduct – second offense, MICH. COMP. LAWS § 750.520f.[1]

On the day set for trial, September 3, 2013, Petitioner entered a no-contest plea. Under the plea agreement, Petitioner agreed to plead no contest to the three counts of CSC I and one count of GBH as a fourth-offense felony offender, in exchange for the dismissal of the electronic-communication charge and the dismissal of the notice of second-offense CSC. In addition, the prosecutor agreed to a sentence at the lower end of the F4 guidelines bracket, which provided for a minimum sentence range of 126 to 210 months. (Plea Hr'g Tr., 3, 5, PageID.137, 139.)

The trial court conducted the plea inquiry, advising Petitioner that all of the offenses to which he intended to plead carried a maximum sentence of life or any term of years, as a result of his fourth-felony-offender status. (*Id.*, PageID.138.) The court also advised that the CSC-I offenses required sex-offender registration and electric monitoring. Petitioner indicated that he had read and understood the rights he was waiving, and that he signed the Advice of Rights form. Petitioner denied having been made any other promises. (*Id.*, PageID.139-140.) After Petitioner had announced his intent to plead no contest, the court reviewed the transcript of the preliminary examination and the police report, which provided the basis for the plea. (*See* Plea Hr'g Tr., ECF No. 10-3, PageID.140.)

---

[1] Petitioner admitted that he was convicted in 1999 of CSC I. (Plea Hr'g Tr., ECF No. 10-3, PageID.141.) Under MICH. COMP. L. § 750.520f, if a person was previously convicted of a qualifying CSC offense, the second or subsequent offense carries a mandatory minimum sentence of five years. The Court notes that Petitioner entered his plea only after the trial court had heard and granted the prosecutor's motion to introduce Petitioner's prior sexual-assault offense under MICH. R. EVID. 404(b). (*See* Kent County Register of Action, ECF No. 10-1, PageID.120-121.)

According to the transcript of the preliminary examination, the victim, Michelle Farrell, testified that, on January 27, 2013, she got off of work at 1:00 p.m. She picked Petitioner up at his house and then went back to her house before going to her mother's residence. When she went to leave, the van she was driving did not work, so Petitioner called his niece to pick them up and take them back to Farrell's house. Farrell, Petitioner and Petitioner's niece then sat at her table and talked, played dominoes, and drank. (Prelim. Exam. Tr., 7, PageID.126.)

Petitioner's niece left at about 8:00 or 9:00 p.m., and Farrell's elder son left at 10:00 or 10:30 p.m., leaving Farrell, her younger son, and Petitioner in the home. They watched a movie for awhile, and then Farrell went to take a shower. When she got out of the shower, Petitioner went into the bathroom and got into the shower. Farrell's younger son then told Farrell that, while she was in the shower, Petitioner had been looking through the messages on Farrell's phone and Facebook page. Farrell told her son that she was not worried about it, so he should not be worried either. (*Id.*, 8, PageID.126.)

After Farrell sent her son to bed, Farrell and Petitioner engaged in consensual sexual intercourse in the living room. After they both cleaned up, they got into bed at 12:30 or 1:00 a.m. (*Id.*, 9, PageID.126.) Petitioner wanted to have sex again, but she told him no. (*Id.*, 19-20, PageID.129.) Petitioner became upset, and he brought up the subject of Farrell's phone, stating that Farrell's son had shown him a picture of a man who was a friend of Farrell's. Farrell responded that her son had not shown it to Petitioner; her son had already told her what Petitioner had done. Petitioner then

- 4 -

called Farrell a "ho." Farrell, fearing that the situation was escalating, tried to call her older son, but he did not answer. (*Id.*, 9, PageID.126.) Once Petitioner found out that she did not reach her son, he started to call her more names, repeating that she was a "ho." Farrell got out of bed and told him that he needed to leave because he was not going to stay in her home and call her names. Petitioner jumped up and, as she went to grab her phone, Petitioner struck it away from her so she could not reach it. (*Id.*, 10, PageID.127.) Petitioner then began to punch her in the face repeatedly. Farrell began to scream and yell, asking him to stop and leave her alone. Farrell's son came to the bedroom door, but when Petitioner saw the boy's hand, he shoved it away and closed and locked the door. Petitioner returned to hitting Farrel. He also kicked and choked her. She fought back by biting and kicking, and she attempted to get the neighbor's attention by screaming and hitting the wall. (*Id.*, 11, PageID.127.) She called out to her son to go get help. Petitioner told her to, "Shut up, bitch. You going to die, you're going to die." (*Id.*, 12, PageID.13.) Petitioner began to choke her again, and she tried to choke him. Petitioner then began to stick his hands up her vagina and up her rectum, before deciding to beat her more. By this time, Farrell's left eye was swollen almost shut, and her face, nose and lip were bleeding. She promised that, if Petitioner left she would not call the police, but he would not believe her. (*Id.*, 13, PageID.127.) She begged him to leave and to let her check on her son, but he refused. By this time, Petitioner had ripped her spaghetti-strapped gown. (*Id.*, 14, PageID.14.) She got up and tried to leave, but he grabbed her and moved her to the bed, where he began to perform oral sex on her. (*Id.*, 15, 25-26, PageID.128, 130-131.) He complained

that she was not getting wet, as if she was supposed to like it. (*Id.*, 15, PageID. 128.) Petitioner again stuck his hands in her vagina and her rectum. (*Id.*, 26, PageID.131.)

Shortly after that, Petitioner took off his shorts and changed into the pants he had worn to the house. Farrell believed he had seen her face and realized the seriousness of the injuries, as he said, "Oh, you're face is fucked up now; I'm going to do about 90 days in jail; that ain't shit; I can do that." (*Id.*, 29, MICH. DEP'T OF CORR., Policy Directive131.) As he was putting his belt on, he picked up her house keys and put them in his pocket, telling her that he was taking them in case she tried to go somewhere after he left. At this point, they heard a knock at the apartment door. Petitioner repeatedly told her to be quiet, saying he would leave when the person at the door left.

At that point, the police came into the apartment and yelled, "Is anybody here[?]" (*Id.*, 17, PageID. 128.) Petitioner let Farrell go, and she ran out of the room. The police officer told her to put something on, but she said she could not see. The officer shone a flashlight in her face and saw the damage. As the police went toward her bedroom, Petitioner came out, saying, "I just beat her ass; here I am right here." (*Id.*)

Farrell identified the pictures taken of her injuries by the nurse examiner from the YWCA and the police. (*Id.*, 18-19, PageID.129.) She testified that there was a period of time after the assault that she did not stay in her house, though she had moved back in by the time of trial. (*Id.*, 32, PageID.132.)

After the court reviewed the relevant portions of the plea agreement and preliminary examination, Petitioner admitted his three prior offenses supporting the fourth-offense felony offender supplement. (Plea Hr'g Tr., ECF No. 10-3, PageID.141-142.) The court found that a jury could find Petitioner guilty of the offenses, that Petitioner understood the pleas and that they were voluntary and accurate. The court indicated that it had made no agreements or deals with anyone on the case. Accordingly, the court accepted the plea. (*Id.*, PageID.142.)

On September 26, 2013, Petitioner was sentenced to serve four terms of fifteen to fifty years as a fourth habitual offender. (Sentencing Transcript, (S. Tr.), 10-4, ECF No. 149.)

### B. Direct Appeal

Petitioner sought leave to appeal to the Michigan Court of Appeals, raising the same two issues presented in this application for habeas corpus relief. (*See* Def.-Appellant's Br. on Appeal, ECF No. 10-5, PageID.179.) The Michigan Court of Appeals denied leave to appeal on May 7, 2014, for lack of merit in the grounds presented. (*See* Mich. Ct. App. Opinion (MCOA Op.), ECF No. 10-5, PageID.152.)

Petitioner filed a pro per application for leave to appeal to the Michigan Supreme Court, raising the same two grounds presented to and rejected by the Michigan Court of Appeals. By order entered December 30, 2014, the Michigan Supreme Court denied his application for leave to appeal, because it was not persuaded that the questions presented should be reviewed. (*See* Mich. Ord., ECF No. ECF No. 10-6, PageID.204.)

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly

established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

Where, as here, the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088,

1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## **Discussion**

I.    <u>Ground I: Scoring of OV-4 & Ineffective Assistance of Counsel</u>

In his first ground for habeas relief, Petitioner argues that the trial court deprived him of due process and equal protection when it scored ten points on Offense Variable (OV) 4. He argues that sentencing counsel was ineffective in failing to object to the scoring.

    A.    Scoring of OV-4

Offense Variable 4 is assessed for psychological injury to a victim. MICH. COMP. LAWS § 777.34. Under subsection (a), ten points are scored upon a finding that "[s]erious psychological injury requiring professional treatment occurred to a

victim." *Id.* The statute notes that the court is to "[s]core 10 points if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." *Id.*

To the extent that Plaintiff claims that the variable was improperly scored, he is not entitled to relief in this proceeding. Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently

- 11 -

egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 447.

Petitioner's sentence is neither arbitrary nor shocking – indeed, it falls well short of the 17½ -year minimum sentence authorized by the high end of the guidelines range to which Petitioner stipulated in his plea agreement. Further, Petitioner does not even argue that the facts found by the court on OV 4 were either materially false or based on false information. *Tucker*, 404 U.S. at 447. Instead, Petitioner argues only that the court should not have reached the finding because the prosecution did not

support it with an expert's report. Such a claim does not indicate that the information on which the trial court relied was false.

In addition, it is apparent that the trial court did not rely on the sentencing guidelines as calculated. The scoring of the guidelines, including OV 4, placed Petitioner in a sentencing cell that required the imposition of a minimum sentence between 225 months and 750 months, or as many as 62 years. (S. Tr., 5, ECF No. 10-4, PageID.149.) As the result of his plea agreement, however, the prosecution had agreed to have Petitioner sentenced under a significantly lower cell, which called for a minimum sentencing range of only 126 to 210 months. The court honored that negotiated agreement, setting a minimum sentence of fifteen years, or 180 months – 45 months less than the minimum sentence called for by the higher guidelines calculation. As a result, the scoring of the ten points was not relied upon by the trial court in sentencing. Accordingly, Petitioner fails to demonstrate a violation of due process.

### B. Ineffective assistance of counsel

Petitioner next argues that his attorney at sentencing rendered ineffective assistance when he failed to challenge the scoring of OV-4. His claim is meritless.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential

standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner utterly fails to demonstrate either prong of the *Strickland* standard. First, Petitioner cannot demonstrate that counsel's performance was professionally unreasonable. The Michigan Court of Appeals affirmed the scoring of the variable on direct appeal. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). As a result, counsel lacked any basis for objecting under state law. Moreover, as earlier discussed in this opinion, the scoring of OV 4 did not violate Petitioner's right to due process. As a result, any objection would have been meritless. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*,

499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

Second, Petitioner cannot demonstrate that he was prejudiced by counsel's failure to object. Because the trial court did not base its sentence on the sentencing level prescribed by the scoring of the guidelines, but instead applied a significantly lower guidelines range negotiated in the plea agreement, counsel's failure to object did not affect the sentence imposed.

For both reasons, Petitioner fails to demonstrate that counsel was ineffective.

II. <u>Ground II: Length of Sentence & Ineffective Assistance</u>

In his second ground for habeas relief, Petitioner argues that his fifteen-to-fifty-year sentence was disproportionate, in violation of the United States and Michigan Constitutions. He also contends that the sentencing court's failure to consider mitigating evidence when imposing the sentence, caused the sentence to be imposed on the basis of inaccurate information, violating his right to due process under the United States and Michigan Constitutions. Petitioner further contends that defense counsel was ineffective in failing to object to the sentence on those grounds.

A. Challenges to length of sentence

Petitioner argued in the state courts and argues here that his sentence of fifteen to fifty years was disproportionate to his offense in light of all of the mitigating circumstances. Petitioner principally claimed that his sentence was disproportionate under the analysis enunciated by the Michigan Supreme Court in *People v. Milbourn*,

461 N.W.2d. 1 (Mich. 1990). In his brief before the Michigan appellate courts, however, Petitioner also argued that the sentence violated the Eighth Amendment.

To the extent Petitioner argues that his sentence was disproportionate under *Milbourn*, 461 N.W.2d. 1, he fails to raise a cognizable habeas claim. In *Milbourn*, the court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). It is plain that *Milbourn* was decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law. *Bradshaw*, 546 U.S.at 76; *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Thus, Petitioner's claim based on *Milbourn* is not cognizable in a habeas corpus action.

With respect to Petitioner's Eighth Amendment claim, the United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). While the Supreme Court has required states to consider individual characteristics and mitigating evidence when sentencing defendants in capital cases, *see, e.g., Tuilaepa v. California*, 512 U.S. 967, 972 (1994), the Court repeatedly has indicated that no comparable requirement exists outside the

capital context, "because of the qualitative difference between death and all other penalties." *Harmelin*, 501 U.S. at 995. "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls well within the maximum penalty under state law. Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment. *See Lockyer v. Andrade*, 538 U.S. 63, (2003) (holding that a state's imposition of a sentence of 25 years to life for a theft valuing $150.00 on an offender with two prior felonies of petty theft was not a clearly established violation of the Eighth Amendment).

Petitioner next argues that, because the court failed to consider the individualized circumstances of the case, including mitigating factors such as family support and Petitioner's drunkenness at the time he committed the offenses, his sentence was based on inaccurate information, in violation of the Due Process Clause. As discussed earlier, to prevail on a due-process claim of being sentenced on inaccurate information, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447. Petitioner does not identify any materially false information on which the sentencing court actually relied. Instead, he attempts to construct a wholly new definition of "inaccurate" information, which is unsupported by clearly established precedent of the United States Supreme Court. As a consequence, the court of appeals' order rejecting his claim was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

Finally, to the extent that Petitioner argues that his sentence violated the due process provisions of the Michigan constitution, he fails to state a claim of constitutional magnitude. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge*, 431 U.S. at 75 n.7 (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES). The federal courts have

no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67-68; *Pulley*, 465 U.S. at 41.

### B. Ineffective Assistance of Counsel

Petitioner claims that his sentencing attorney was ineffective for failing to object to the sentence of fifteen to fifty years' imprisonment. Because the Michigan Court of Appeals rejected his state-law sentencing claims, and because his sentence did not violate the federal constitution, any objection by counsel would have been futile. As previously discussed, an attorney's failure to make a meritless motion does not constitute ineffective assistance of counsel. *See Smith*, 591 F.3d at 523; *O'Hara*, 499 F.3d at 506; *Harris*, 204 F.3d at 683.

### **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. See *Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated: May 8, 2017          /s/ Phillip J. Green
                            PHILLIP J. GREEN
                            United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).